IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ABBOTT LABORATORIES, | ) | |
| | ) | |
| Plaintiff, | ) | No.12 C 5194 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| GRAHAM EARNSHAW, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Abbott Laboratories ("plaintiff") filed a four-count amended complaint against defendant

Graham Earnshaw for violation of the Illinois Uniform Deceptive Trade Practices Act (Count I),

commercial disparagement (Count II), violation of the Illinois Consumer Fraud and Deceptive

Business Practices Act (Count III), and civil conspiracy (Count IV). On September 11, 2012,

defendant moved to dismiss the amended complaint for lack of personal jurisdiction, *forum non*

*conveniens*, failure to plead proper venue, and failure to state a claim in Counts II and IV.  In the

alternative, defendant moved for a stay of proceedings. For the reasons described below, the

motion to dismiss is granted.

## BACKGROUND

Plaintiff is a corporation headquartered in Lake County, Illinois that sells nutritional

products for infants and adults, including the baby formula "Similic Stage 1."  Defendant is the

publisher of the China Economic Review magazine and the founder, sole proprietor, and

controlling person of CER Research, an investment research firm based in Shanghai.  On March

22, 2012, defendant published a report entitled "Abbott Laboratories Similac Stage I: A First

Step Towards Malnutrition" (the "CER Report") on the CER Research website. The CER Report

claimed to have tested the products of foreign providers of infant milk powder to China and

found that Abbott's formula did not meet international or Chinese standards. The report further

stated that the formula could cause various illnesses in infants.

Plaintiff alleges that the CER Report portrayed its products in a false light and in a

misleading and disparaging manner. Plaintiff further alleges that the CER Report was a "hit

piece" designed to damage plaintiff's reputation and sales. Defendant also allegedly posted an

alert on his website, cautioning investors to avoid Abbott stock, which plaintiff interprets as a

recommendation to investors to sell or short-sell the stock in order to cause plaintiff's stock price

to decline.

In response to the CER Report, plaintiff issued a cease and desist letter to CER,

demanded retraction of the CER Report, and requested issuance of a statement clarifying errors

contained in the CER Report. Plaintiff also released a statement reporting that experts quoted in

the CER Report did not intend their statements to be used in the way the CER Report had used

them. These experts subsequently asked that their statements be removed from the CER Report.

Plaintiff also initiated proceedings against defendant in Shanghai and Hong Kong before filing

the instant case. In the instant suit, plaintiff alleges generally that as a result of the CER Report,

plaintiff "has sustained damage to its trademarks, to its reputation, and to its sales and revenues,"

although plaintiff does not allege any particular lost sales or reduction in the price of its stock.

In response, defendant has filed a motion to dismiss the complaint, or alternatively, stay

the proceedings until the resolution of the Shanghai and Hong Kong matters. Defendant alleges

four grounds for dismissal. First, defendant states that the court does not have personal

jurisdiction over defendant. Second, defendant states that Shanghai and Hong Kong represent

more appropriate fora and that the instant suit should be dismissed under the doctrine of *forum*

*non conveniens*. Third, defendant alleges that plaintiff has improperly pled jurisdiction for the suit. Finally, defendant alleges that plaintiff has failed to state a claim in Counts II and IV of the complaint, and moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

**A.    Motion to Dismiss for Lack of Personal Jurisdiction**

In contesting a Rule 12(b)(2) motion to dismiss, plaintiffs bear the burden of establishing a prima facie case for personal jurisdiction. See Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp. ("Reimer Express"), 230 F.3d 934, 939 (7th Cir. 2000); Steel Warehouse of Wisc. Inc. v. Leach, 154 F.3d 712, 714 (7th Cir. 1998). When determining personal jurisdiction over a defendant, the court can consider affidavits submitted by the parties, see Kontos v. U.S. Dept. of Labor, 826 F.2d 573, 576 (7th Cir. 1987), and "must accept all undenied factual allegations and resolve all factual disputes in favor of the party seeking to establish jurisdiction." Saylor v. Dyniewski, 836 F.2d 341, 342 (7th Cir. 1988).

The court has jurisdiction over a nonresident, nonconsenting defendant in a diversity case if Illinois state courts would have jurisdiction. McIlwee v. ADM Industries, Inc., 17 F.3d 222, 223 (7th Cir. 1994); RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272 (7th Cir. 1997). "The Illinois long-arm statute permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions." Reimer Express, 230 F.3d at 940, citing 735 Ill.Comp.Stat. 5/2-209(c).

There are two types of personal jurisdiction, general and specific. If a defendant's contacts with the forum state are sufficiently "substantial [,] . . . continuous and systematic," personal jurisdiction may exist for a cause of action unrelated to those contacts. Perkins v.

Benguet Consol. Mining Co., 342 U.S. 437, 447-48 (1952). If a nonresident defendant's contacts are not sufficient to support general jurisdiction, a defendant may still be subject to specific jurisdiction for claims arising out of or related to its "purposefully" directed activities within the state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n. 15 (1985).

To comport with due process, however, a defendant "must have 'minimum contacts' with Illinois such that maintaining a lawsuit here does not offend 'traditional notions of fair play and substantial justice.'" Berol Corp. v. BIC Corp., 02 C 0559, 2002 WL 1466829, at *2 (N.D. Ill. July 8, 2002), citing International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Simply put, a defendant must have "purposefully availed" himself of the privilege of conducting activities within Illinois, such that he should "reasonably anticipate being haled into court" here. Worldwide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Defendant may not be forced to defend this lawsuit in Illinois "solely as a result of random, fortuitous, or attenuated contacts" or because of the "unilateral activity of another party or third person." Burger King Corp., 471 U.S. at 475 (internal citations omitted).

In the instant case, plaintiff has not alleged that defendant's contacts with Illinois are sufficient to support general jurisdiction. The court will therefore examine whether defendant purposefully directed activities at Illinois and whether the alleged injuries arise out of those contacts sufficient to establish personal jurisdiction over defendant.

The Supreme Court has held that there is sufficient contact to justify the exercise of personal jurisdiction where a defendant took actions "expressly aimed" at the forum state. Calder v. Jones, 465 U.S. 783, 789 (1984). The test articulated in Calder is whether there was:

(1) intentional conduct; (2) expressly aimed at the forum state; (3) with the defendant's

knowledge that the effects would be felt or the injury would occur in the forum state. Tamburo v.

Dworkin, 601 F.3d 693, 704-708 (7th Cir. 2010) cert. denied, 131 S. Ct. 567, 178 L. Ed. 2d 413

(U.S. 2010). Here, the first and third prongs of the Calder test are easily met.  The complaint

alleges that defendant purposefully published misleading and disparaging comments in the CER

Report.  Plaintiff also alleges that defendant was entirely aware that plaintiff is headquartered in

Illinois and therefore knew that the CER Report would result in injury to plaintiff in Illinois.

The second prong of the test, the "expressly aimed" requirement, requires greater analysis.

Courts have struggled with the "expressly aimed" language of Calder. See, e.g.,

Tamburo, 601 F.3d at 704-708 (explaining the tension in differing interpretations).  Some have

read the decision expansively, holding that Calder "requir[es] only conduct that is 'targeted at a

plaintiff whom the defendant knows to be a resident of the forum state,'" without consideration

of whether the conduct is directed at the forum. Id. at 704 (quoting Bancroft & Masters, Inc. v.

Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000)). Other courts have read it more

narrowly to only "require that the forum state be the 'focal point of the tort.' " Id. (quoting

Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1074 n. 9 (10th Cir. 2008)).

In Tamburo, the Seventh Circuit considered the various decisions issued in the wake of

Calder and reconciled the tension in these cases to provide a more coherent standard. The court

noted that cases such as Wallace v. Herron, 778 F.2d 391 (7th Cir. 1985), and Indianapolis Colts,

Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership, 34 F.3d 410 (7th Cir. 1994), have

required a forum-state injury as well as "something more" directed at the forum state to satisfy

jurisdiction. The Tamburo court noted that, in Janmark, Inc. v. Reidy, 132 F.3d 1200 (7th Cir.

1997),  the court took a more expansive view of <u>Calder</u>, seeming to suggest that a tort is actionable wherever the plaintiff corporation feels the injury.  The <u>Tamburo</u> court ultimately concluded that, while <u>Janmark</u> did not articulate a "something more" standard, the <u>Janmark</u> court did base its conclusion on both the "Illinois-based injury *and* the fact that the defendant acted with the purpose of interfering with sales originating in Illinois." <u>Tamburo</u>, 601 F.3d at 706 (emphasis in original).  Therefore, the court in <u>Tamburo</u> concluded that the "something more" standard prevails in the Seventh Circuit.

In the instant case, plaintiff alleges numerous facts in an attempt to establish the "something more." The fact that defendant and his companies employ American interns and have solicited the opinions of experts based in the Midwest is not evidence that defendant "expressly aimed" his conduct at the state of Illinois. Nor do listing prices of subscriptions in U.S. dollars (in addition to Hong Kong dollars and Chinese yuan) or translating reports into English evidence an intent by defendant to target plaintiff in Illinois. Plaintiff focuses on a page of the report that described the plaintiff company in three sentences. Plaintiff contends that the paragraph identifying plaintiff as headquartered in Illinois, with offices, facilities, and R&D centers in China, is evidence that defendant explicitly intended for the Illinois company to feel the effects of the negative report in Illinois. Although the page does identify the headquarters of the company and discusses plaintiff's market share in China, a single mention of Illinois on page 9 of the 14-page report is not indicative of an intent to target the company's headquarters in Illinois.  The publication of a report directed at the Chinese market that simply identifies the headquarters of the target company does not amount to the "something more" required to conclude that defendant intended plaintiff to experience harm in Illinois.

Although plaintiff alleges that sales of Similac in China "roll up" in the Illinois corporation's financial statements, <u>Calder</u> requires more than an indirect financial impact. Economic harm that "rolls up" in Illinois is not the same as a tortious injury that occurs in Illinois. <u>See</u> <u>Janmark</u>, 132 F.3d at 1202 ("Ruining [a shipment of carts in New Jersey by pushing them into the Atlantic Ocean] would diminish Janmark's bank accounts in Illinois, but this would not relocate the tort from New Jersey to Illinois."); <u>see also</u> Black's Law Dictionary 801 (8th ed. 2004) ("Some authorities distinguish harm from injury, holding that while harm denotes any personal loss or detriment, injury involves an actionable invasion of a legally protected interest."). These alleged actions are not specifically directed at the forum state and do not substantiate personal jurisdiction.

Plaintiff's main allegations regarding defendant's "directed efforts" at Illinois are that the article was a "hit piece" intended to damage the reputation and sales of the Illinois company. By including the company profile in the CER Report, plaintiff alleges that defendant was encouraging investors to target the plaintiff's stock. But plaintiff does not allege that these statements, posted on a website accessible around the world, were directed specifically at Illinois investors. Plaintiff cites <u>Tamburo</u>, which dealt with defamation via internet postings, to support the idea that the use of public website is a sufficient method of entry into the forum jurisdiction to satisfy the "expressly aimed" standard. In <u>Tamburo</u>, however, the defendants allegedly contacted the plaintiff in Illinois and exhorted their readers to harass the plaintiff in Illinois. The focal point of the defamatory postings and communications was indisputably Illinois. Here, plaintiff does not claim that defendant had any contact with the Illinois company, urged investors to take any action against plaintiff in Illinois, or contacted any Illinois residents.

Plaintiff's complaint states that a Chicago-based hedge fund manager is a "follower" of the China Economic Review and receives the company's postings in Illinois. The complaint does not allege, however, that this individual received the report in question. Plaintiff also contends that an individual in Chicago read the CER report and posted on a Yahoo! Finance website regarding the report, but plaintiff has not alleged that defendant sent the CER Report to this individual. More importantly, the fact that an Illinois resident read the CER Report is not evidence that defendant "expressly aimed" the report at Illinois. Other commenters are listed as located in Beverly Hills and New Jersey; their locations similarly do not evince an intention on defendant's part to aim his actions at California or New Jersey.

Beyond the economic impact felt by the Illinois company and the location of its headquarters in Lake County, plaintiffs have not alleged "something more" to justify the exercise of personal jurisdiction. Because the court finds that it lacks personal jurisdiction over the defendant the court need not reach the alternative grounds for dismissal of *forum non conveniens*, venue and failure to state a claim.

## CONCLUSION

For the reasons described above, the court grants defendant's motion to dismiss on the grounds of lack of personal jurisdiction.

ENTER:     **January 17, 2013**

_____
**Robert W. Gettleman**
**United States District Judge**

8